**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DISTRICT)**

| | |
|---|---|
| Affinity Recovery Center LLC <br> C/O Kurtz Peters & Associates LLC. <br> 350 Camino Gardens Blvd #300 <br> Boca Raton, Fl 33432 <br><br> *Plaintiff,* <br><br> v. <br><br><br> Town Commissioners of Sudlersville <br> 200 S. Church Street, <br> PO Box 116 <br> Sudlersville, Md 21668 <br><br> *Defendants.* | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Case No.: <br> * <br> * Jury Trial Demanded <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Affinity Recovery Center LLC ("Affinity"), by and through its undersigned counsel, James Peters and the law firm of Kurtz, Peters and Associates LLC, brings this action against Defendant Town Commissioners of Sudlersville, (the "Town"), and states as follows:

**PARTIES**

1.  Plaintiff Affinity Recovery Center LLC is a Maryland limited liability company. Its principal office is located at 3630 Old Milford Mill Road Windsor Mill, MD 21244.

2.  Defendant the Town Commissioners of Sudlersville, (the "Town"), the official name of the Town of Sudlersville *see* Charter, is a municipal corporation organized under the laws of the state of Maryland located at 200 S. Church Street PO Box 116, Sudlersville, 21668.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 3613 and 12133, because Affinity seeks redress for violations of federal civil rights law.

4. The relief requested is authorized by 42 U.S. Code §§ 3613, 1988, 12133 and 12205.

5. Venue is proper under 28 U.S.C. § 1391(b), because all of the claims and events giving rise to this action occurred in this District.

6. By letter dated February 24, 2023, and hand delivered by certified mail to the Town Attorney and Town Commissioners, Affinity notified the town of its intent to seek relief for the claims alleged in this Complaint, thereby.

## PRE-SUIT REQUIREMENTS

### I. THE MARYLAND LOCAL GOVERNMENT TORT CLAIMS ACT

7. Although the Plaintiff maintains that there is no applicable immunity for State of Maryland statutory or common law claims and/or those arising under Federal law, including United States Constitutional claims, this Complaint nonetheless complies with the Maryland Local Government Tort Claims Act (Maryland Code Annotated, Courts and Judicial Proceedings, §§ 5-301, *et seq*.). The Plaintiff submitted notice of his claims via United States Postal Service certified mail, return receipt requested, postage prepaid to the Town of Sudlersville February 21st, 2023. The Plaintiff further asserts the Town of Sudlersville had good and sufficient actual and/or constructive prior notice of all claims. '

### II. NON-WAIVER OF DEFENSES

8. The Plaintiff's compliance with applicable State of Maryland and Town notice requirements notwithstanding, the Plaintiff makes no waiver of defenses against applicable notice requirements for any State of Maryland statutory or common law tort claim brought forth in the United States District Court venue or for any claim arising under Federal law.

**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS AND COUNTS**

9. This action arises out of the Town's discriminatory conduct in refusing to issue a Special Exception and Use and Occupancy ("U&O") Permit authorizing Affinity to operate a 16-bed residential substance abuse treatment facility at 106 Charles Street Sudlersville, Maryland 21668 (Property) solely in response to an unlawful zoning ordinance passed in the Town.

10. Affinity sought to be part of the solution of the ongoing drug crisis gripping the nation by opening a first-class treatment facility at the Property. Affinity's sole purpose is to treat recovering addicts, and, by extension, help reduce the substance abuse epidemic.

11. On or about February 22, 2022, 106 Charles Street Certificates LLC purchased the property located at 106 Charles Street in Sudlersville, Maryland, hereinafter "Property".

12. The Property was purchased from the Queen's Anne's County Housing Authority as a bono fide purchase for value. The new owner purchased the Property knowing that it had previously been used for a 16-bed assisted living facility called Safe Haven Manor. The fact the property had been used as a 16 bed assisted living facility significantly increased the value of the property to the new purchaser.

13. From 2009 until 2019 Safe Haven Manor operated a 16-bed assisted living facility at the property. The town did not make Safe Haven Manor seek relief by way of variance, or special exception, to operate with 16 beds or to any from any Town parking

ordinances.

14. On or about March 1, 2022, 106 Charles Street Certificates LLC entered into a lease agreement with Affinity Recovery Center LLC (Affinity) for the purpose of opening a 16- bed residential substance mis-use treatment program.

15. On or about August 22, 2022, Affinity filed a petition with the town, seeking a zoning variance from the town to use the subject property as 16-bed Group Home.

16. Affinity amended its petition to seek a special exception, not a variance, from the Town, for a Group Home with 16 beds on October 24, 2022.

17. Under the Town's zoning code a Group Home must seek a special exception to operate with even one bed.

18. The Town denied Affinity's request for a special exception to allow 16 beds on the property and allowed only 8 beds at the exact same location 16 beds were previously authorized for assisted living.

19. It is not economically viable to operate an 8-bed facility at the Property. The reason it is not economically viable to operate an 8-bed facility at the Property when it is for 16 beds is that State licensing requirements require the exact same number of staff for 8 beds as for 16 beds. While the revenue for 16 beds is double that of 8 beds. Since it is not economically viable to operate an 8-bed facility, Affinity has not moved forward with the project.

20. The town cited its own zoning code as the reason it could not grant Affinity the special exception for 16 beds.

21. Under the Town's zoning code § 4-3. B (1) Residential use category the definition of Group Home is *"...a facility that is licensed by the Maryland Department of Health and Mental Hygiene shared by persons who are unable to live alone because of age-related impairments or*

*physical, mental or visual disabilities and who live together as a single housekeeping unit in a long-term, household-like environment in which staff persons provide care, education, and participation in community activities for the residents with a primary goal of enabling the resident to live as independently as possible. Group domiciliary care homes do not include pre-release, work-release, probationary, or other programs that serve as an alternative to incarceration."*

22. Under the Town's zoning code § 4-3. B (3) Residential use category the definition of Continuing Care Retirement Communities is "*Establishments primarily engaged in providing a range of residential and personal care services with on-site nursing care facilities for (1) the elderly and other persons who are unable to fully care for themselves and/or (2) the elderly and other persons who do not desire to live independently. Individuals live in a variety of residential settings with meals, housekeeping, social, leisure, and other services available to assist residents in daily* living. Assisted living facilities with on-site nursing care facilities are included in this subcategory."

23. Section § 5-3. Of the town zoning code states *"Group home, home day care. Group home, home day care are permitted in the MU and TR districts and subject to the requirements of that district except as herein provided:* A. **_The maximum number of residents of the facility shall be eight (8)_**. *B. In addition to the residents, there shall be a maximum of three (3) full-time non-resident employees on the premises. C. No exterior alterations, additions, or changes to the structure shall be permitted in order to accommodate or facilitate a group home without a Special Exception granted by the Board of Appeals. D. Besides the required parking for the dwelling unit, one (1) additional parking space per each nonresident employed on the premises is to be located to the side or rear yard. E. No outside storage of equipment shall be permitted."*

24. The Town ruled that Affinity's use was as a group home and as such refused to allow Affinity to operate with 16 beds despite the fact Safe Haven operated for a decade prior with 16 beds.

25. Under the Town's own zoning code there are five definitions of various group

living facilities but only Group Homes, which are considered residential drug rehabilitation centers, are limited to an 8 bed maximum. The other four group living definitions are not limited to the 8-bed maximum.

26. Furthermore, to disguise its discriminatory intent in limiting Group Homes to 8 beds, while not limiting Continuing Care Retirement Communities to the same 8 bed limit, the Town's Code lumps day care centers in with Group Homes when limiting them to 8 beds. The issue with that is day care centers typically have no residents at all so limiting them to 8 beds has no effect whatsoever on their ability to operate.

27. Additionally, The Town requires Group Homes to have more available parking than all the other group living facilities under its code for absolutely no neutral reasons.

28. The only rational explanation for the Town limiting Group Homes to 8 beds and requiring unduly burdensome parking requirements, while not limiting the other four group living facilities under its code to the same 8 beds and parking requirements, is because the Town wishes to prevent residential drug treatment facilities from operating in its limits.

29. The Property in question is sufficiently large enough to comfortably house 16 recovering addicts in it. Affinity has followed all life safety requirements for a 16- bed facility.

30. There is no analogous provision of the zoning code to section 5-3 as it pertains to assisted living facilities for the elderly and as such assisted living facilities are permitted to operate with 16 beds in the town. Evidence of this fact is there was a 16-bed facility in the exact same location as Affinity attempted to open their facility.

31. The town attempts to hide its discriminatory intent by adding daycare centers in with group homes, in its zoning code, and saying neither type of facility can have more than 8 beds. It is widely known day care centers have no residents. It is right in the name "day care", which means car during the day.

32. In fact, as of today's date Dogwood Village is an open and operating a senior housing community with at least 16 beds located at 109 Charles St, Sudlersville, MD 21668 directly across the street from the Property.

33. The Town's actions were discriminatory as to a protected class: those suffering from substance use disorder and in need of recovery treatment services. There can be no rational basis for denying a U&O Permit or special exception based on bias, fears and prejudice against people with one type of disabilities, while allowing a near identical use for people with other types of disabilities to exist in the same location.

## COUNT I

### Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132) Discriminatory Methods of Administration

34. Plaintiff incorporates by reference each and every allegation made in the preceding paragraphs.

35. Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

36. The Town is a "public entity" subject to the anti-discrimination mandates of Title II of the ADA.

37. Administration of zoning laws is a "service, program, or activity" within the meaning of Title II of the ADA.

38. The anticipated end users of Affinity are "disabled" under the ADA, as an addiction or dependency on opioids or other drugs is a "physical or mental impairment that substantially limits one or more major life activities of" the recovering addict, such as caring

for oneself, sleeping, speaking, concentrating, thinking, communicating, and working, 42 U.S.C. §§ 12102(1)(A), (2), and the term "individual with a disability" may not be construed to exclude an addict who "is participating in a supervised rehabilitation program and is no longer engaging in such [drug] use." *Id.* at § 12210(b)(2).

39. Indeed, a " group home" is defined in the Town's zoning code as a group care facility *"…a facility that is licensed by the Maryland Department of Health and Mental Hygiene shared by persons who are unable to live alone because of age-related impairments or physical, mental or visual disabilities and who live together as a single housekeeping unit in a long-term, household-like environment in which staff persons provide care, education, and participation in community activities for the residents with a primary goal of enabling the resident to live as independently as possible. Group domiciliary care homes do not include pre-release, work-release, probationary, or other programs that serve as an alternative to incarceration."*

40. The anticipated residents of Affinity are also "qualified" under Title II, as they "meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

41. A public entity may not "utilize criteria or methods of administration: (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; (ii) That have the purpose or effect of defeating or substantially impairing. accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State." 28 C.F.R. § 35.130(b)(3).

42. By allowing a facility for elderly care to exist at the Property with 16-beds but refusing to allow a residential drug treatment facility to operate at the same location with the

same amount of beds, the Town is discriminating against different subsets of disabled individuals with no rational basis to do so.

43. The zoning code in question is having the actual effect of preventing any residential drug treatment facilities from existing in the Town because it is simply not economically viable to open a residential drug treatment facility with 8 beds.

44. Such discrimination was intentional, which is evidenced by the fact the Town has not restricted any of the other four subsets of group living establishments to an 8-bed maximum count.

45. The Town then tried to cover up the fact of its discriminatory intent by lumping day care centers into the 8-bed maximum when it is obvious that a "day care" has no residents.

46. The entire point of the 8-bed maximum bed count for Group Homes was to discriminate against one subset of disabled invidious in favor of another subset of disabled individuals.

**COUNT II**
**Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)**
**Imposition of Discriminatory Eligibility Criteria and Requirements**

47. Plaintiff incorporates by reference each and every allegation made in the preceding paragraphs.

48. The implementing regulations of Title II of the ADA provide that "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(8).

49. While "[a] public entity may impose legitimate safety requirements necessary for

the safe operation of its services, programs, or activities," it "must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 35.130(h).

50. By requiring Affinity to obtain a special exception prior to opening the facility for business, while not requiring an elderly care facility in the same location to do the same, Town officials imposed unlawful criteria that tended to screen out recovering addicts from equal enjoyment of the zoning process and the Property. Such requirements were based on stereotypes and generalizations about the anticipated end users of Affinity, there was no legal basis for imposing them on Affinity.

51. As a result, the Town violated Title II of the ADA.

## COUNT III
## Violation of the Fair Housing Act (42 U.S.C. §§ 3601 *et seq.*)

52. Plaintiff incorporates by reference each and every allegation made in the preceding paragraphs.

53. The Fair Housing Act prohibits discriminatory housing practices, including discrimination in the sale or rental of a dwelling, as well as in other transactions wherein a legal entity is prohibited from acting to "otherwise make unavailable or deny, a dwelling." 42 U.S.C. § 3604(a). Such prohibited discrimination includes acting "to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." *Id.* at § 3604(f)(1)(B). Such discrimination also includes discriminating "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." *Id.* at § 3604(f)(2)(B).

54. The Property is a dwelling covered by the aforementioned anti-discrimination protections, as it is a building designed or intended for occupancy as a residence of one or more families. *Id.* at § 3602(b)

55. The anticipated end users of Affinity have a "handicap" and are therefore covered by these anti-discrimination protections, as addiction is a physical or mental impairment which substantially limits one or more of a person's major life activities. *Id.* at § 3602(h). The Town's processing of applications for U&O Permits and application of the Town's zoning code are actions subject to the Fair Housing Act, as such land use transactions can "otherwise make unavailable or deny, a dwelling." *Id.* at § 3604(a).

56. By rejecting Affinity's applications and issuance of a Special Exception at the Property for 16 beds because an unlawful zoning code implemented due to prejudice against recovering addicts, *i.e.* people with a handicap, the Town – acting through the Zoning Code– has made Affinity unavailable to its anticipated residents because of their handicap. Such conduct violates the Fair Housing Act.

57. The Town also violated the Fair Housing Act by discriminating in the terms, conditions, privileges, or provision of services or facilities in connection with Affinity because of the handicap of the anticipated residents. Without a the Special Exception Affinity is unable to provide residential substance abuse treatment at the Property to individuals who need such services.

58. As explained *supra*, the Town's discrimination was intentional.

59. The Town's conduct also involved reckless or callous indifference to the federally protected rights of the anticipated end users of Affinity.

60. Because of the Town's violations of the Fair Housing Act and its reckless and/or

callous disregard for the rights of recovering addicts in Maryland, Affinity has not been able to open for business and recovering addicts are without access to a first-class, much needed treatment program.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Affinity Recovery Center LLC demands that judgment be entered in its favor and against Defendant Town Commissioners and that the following relief be granted;

A. A declaration that the conditional use of the Property is as a "Group Home" under the Town's zoning code, and any intensification of that use is permitted as a matter of right and not subject to Town approval under. Section § 5-3 of the Sudlersville Zoning Code.

B. A declaration that the Town is in violation of the Americans with Disabilities Act, and the Fair Housing Act, so long as it continues to deny Affinity the Special Exception it has sought;

C. Compensatory damages in an amount exceeding $1,000,000.00, to be determined at trial, plus interest.

D. Punitive damages for the Town's reckless, callous, malicious and intentional disregard of the federal rights of recovering addicts, the end users of Affinity, in an amount to be determined at trial;

E. Reasonable attorneys' fees, expert witness fees, and other costs and expenses that Affinity has incurred in both unnecessarily litigating the conditional use of the Property before the Town and in this action; and

F. Any such other relief as this Court may deem proper.

-13-

        Respectfully submitted,

        Kurtz, Peters & Associates,

        /s/ /James Peters/
        James Peters Esq. Federal Bar No. 20105
        350 Camino Gardens Blvd. #300
        Boca Raton, Florida, 33432
        P. (301) 795-8272 F. (240) 489-6777
        jpeters@kurtzandpeters.com

## **REQUEST FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.