IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| AFFINITY RECOVERY CENTER, LLC, ) ) ) Plaintiff, ) ) v. ) ) ) TOWN COMMISSIONERS OF ) SUDLERSVILLE, ) ) Defendants. ) | Civil Action No. 23-cv-00714-LKG<br><br>Dated: January 12, 2024 |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

In this civil action, Plaintiff, Affinity Recovery Center LLC ("Affinity"), alleges that Defendants, the Town Commissioners of Sudlersville, Maryland, discriminated against it upon the basis of disability, by denying a request for a special exception and use and occupancy permit (the "Permit") to allow for the operation of a 16-bed residential substance abuse treatment facility, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*. *See generally*, ECF No. 1. The Defendants have moved to dismiss the complaint, or, in the alternative, for summary judgment in their favor, pursuant to Fed. R. Civ. P. 12(b)(6) and 56. ECF No. 8. The motion is fully briefed. ECF Nos. 8, 12, 13. No hearing is necessary to resolve the motion. *See* L.R. 105.6. For the reasons that follow, the Court: (1) **GRANTS** the Defendants' motion to dismiss or, in the alternative, for summary judgment and (2) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this civil action, Affinity alleges that the Defendants discriminated against it upon the basis of disability, by denying a request for a special exception to the Town of Sudlersville's use and occupancy zoning permit to allow for the operation of a 16-bed residential substance abuse treatment facility in Sudlersville, Maryland, in violation of the ADA and FHA. *See generally*, ECF No. 1. Specifically, Affinity asserts the following claims against the Defendants in the complaint: (1) Discriminatory methods of administration, in violation of Title II of the ADA (Count I); (2) Imposition of discriminatory eligibility criteria and requirements, in violation of Title II of the ADA (Count II); and (3) Unlawful discrimination, in violation of the FHA (Count III). *See id.* at ¶¶ 34-60. As relief, Affinity seeks certain declaratory relief and to recover monetary damages, attorney's fees and costs from the Defendants. *Id.* at Prayer for Relief.

### The Parties

Plaintiff Affinity is a Maryland limited liability company and treatment facility established to treat recovering addicts and to help reduce the substance abuse epidemic. *Id.* at ¶¶ 1, 10.

The Defendants are the Town Commissioners for the Town of Sudlersville, Maryland, which is a municipal corporation organized under the laws of the state of Maryland. *Id.* at ¶ 2.

### The Zoning Code

As background, the Town of Sudlersville has a zoning code (the "Zoning Code") that imposes limits on the number of residents of a group home and requires the operators of group homes to seek a special exception to its use and occupancy permit to perform any exterior alterations to a property, to facilitate the operation of a group home within the Town. Specifically, Section 5-3 of the Zoning Code provides, in relevant part, that:

> Group home, home day care are permitted in the MU and TR districts and
> subject to the requirements of that district except as herein provided:

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the Defendants' dispositive motion, Affinity's response in opposition thereto, and the Defendants' reply brief. ECF Nos. 1, 8, 8-1, 12, 12-1 and 13. Unless otherwise stated, the facts recited herein are undisputed.

    A. The maximum number of residents of the facility shall be eight (8).

    B. In addition to the residents, there shall be a maximum of three (3) full-time non-resident employees on the premises.

    C. No exterior alterations, additions, or changes to the structure shall be permitted in order to accommodate or facilitate a group home without a Special Exception granted by the Board of Appeals.

    D. Besides the required parking for the dwelling unit, one (1) additional parking space per each nonresident employed on the premises is to be located to the side or rear yard.

    E. No outside storage of equipment shall be permitted.

*Id.* at ¶ 23; *see also* ECF No. 8-4 at 44-45.  Section 4-3 of the Zoning Code also contains several residential use categories, including Group Living.  Under Section 4-3(B) of the Zoning Code, Group Living is defined as:

> Residential occupancy of a building by a group other than a household. Group living uses typically provide communal kitchen/dining facilities. Examples of group living uses include group homes, convents, monasteries, nursing homes, assisted living facilities, sheltered care facilities, retirement centers, homeless centers, shelters and halfway houses.

ECF No. 8-4 at 28.  Section 4-3(B) of the Zoning Code describes five subcategories of Group Living, including: (1) group domiciliary care homes; (2) sheltered care; (3) continuing care retirement communities; (4) senior housing project; and (5) halfway houses.  *See id.* at 28-29.

    Relevant to this dispute, Section 4-3(B)(1) of the Zoning Code defines a group domiciliary home as:

> [A] facility that is licensed by the Maryland Department of Health and Mental Hygiene shared by persons who are unable to live alone because of age-related impairments or physical, mental or visual disabilities and who live together as a single housekeeping unit in a long-term, household-like environment in which staff persons provide care, education, and participation in community activities for the residents with a primary goal of enabling the resident to live as independently as possible. Group domiciliary care homes do not include pre-release, work-release, probationary, or other programs that serve as an alternative to incarceration.

*Id.* at 29.  In addition, Section 4-3(B)(3) of the Zoning Code defines a continuing care retirement community as:

> Establishments primarily engaged in providing a range of residential and personal care services with on-site nursing care facilities for (1) the elderly and other persons who are unable to fully care for themselves and/or (2) the elderly and other persons who do not desire to live independently. Individuals live in a variety of residential settings with meals, housekeeping, social, leisure, and other services available to assist residents in daily living. Assisted living facilities with on-site nursing care facilities are included in this subcategory.

*Id.*

> Lastly, the Zoning Code defines a group home as:

> Any residential structure used to provide assisted community living for not more than eight (8) persons with physical, mental, emotional, familial, or social difficulties. This does not include houses organized for this purpose by public or private schools, or churches or other religious or public institutions caring for such persons within the group home building while parents or other custodial persons are attending services, activities or meetings.

*Id.* at 121.

Affinity's Petition For An Exception To The Permit

On February 22, 2022, 106 Charles Street Certificates, LLC ("Charles Street Certificates") purchased the property located at 106 Charles Street in Sudlersville, Maryland (the "Property") from the Queen Anne's County Housing Authority.  ECF No. 1 at ¶ 11.  The Property had previously been used for a 16-bed assisted living facility called Safe Haven Manor, from 2009 to 2019.  *Id.* at ¶¶ 12-13.

On March 1, 2022, Affinity entered into a lease agreement with Charles Street Certificates for the purpose of operating a 16-bed residential substance abuse treatment facility.  *Id.* at ¶ 14.  And so, Affinity filed a petition with the Town of Sudlersville seeking a zoning variance to use the Property as 16-bed group home on August 22, 2022.  *Id.* at ¶ 15.

Subsequently, Affinity amended its petition to seek a special exception to the Permit to operate a group home with 16 beds on October 24, 2022.  *Id.* at ¶ 16.  Sometime thereafter, the Defendants denied Affinity's petition for a special exception to the Permit to allow for the

4

operation of a 16-bed group home. *Id.* at ¶¶ 18-20. But, the Defendants approved the operation of an eight-bed group home at the Property. *Id.*

Affinity's Discrimination Allegations

In Counts I and II of the complaint, Affinity alleges that the Defendants violated the ADA, by: (1) refusing to allow Affinity to operate a 16-bed substance abuse treatment facility at the Property, while previously allowing Safe Haven Manor to operate a 16-bed residential assisted living facility at the same location; (2) requiring Affinity to obtain a special exception to the Permit to operate its substance abuse facility; and (3) rejecting its application for a special exception to the Permit. *Id.* at ¶¶ 42, 44.

In Count III of the complaint, Affinity alleges that, by denying its petition for a special exception to the Permit, the Defendants made accessible housing unavailable to the future residents of its substance abuse treatment facility, and discriminated against Affinity, and these future residents, in the terms, conditions, privileges, or provision of services or facilities based upon their handicap, in violation of the FHA. *Id.* at ¶¶ 56-57. In this regard, Affinity alleges that it is unable to provide residential substance abuse treatment services at the Property without receiving a special exception to the Permit. *Id.*

Affinity also contends that it cannot operate an eight-bed substance abuse treatment facility, because a facility with only eight beds would lose money and financially fail. *Id.* at ¶ 19. And so, Affinity further contends that the Defendants have "imposed unlawful criteria that tend to screen out recovering addicts from equal enjoyment of the zoning process and the Property." *Id.* at ¶ 50.

**B.     Procedural History**

Affinity commenced this civil action on March 16, 2023. ECF No. 1. On April 24, 2023, the Defendants filed a motion to dismiss, or, in the alternative, for summary judgment, and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 12(b)(6) and 56. ECF Nos. 8 and 8-1.

On May 8, 2023, Affinity filed a response in opposition to the Defendants' motion. ECF No. 12. On May 22, 2023, the Defendants filed a reply in support of their motion.

The Defendants' dispositive motion having been fully briefed, the Court resolves the pending motion.

## III.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 8(a) And 12(b)(6)

Under Fed. R. Civ. P. 8(a), a complaint must set forth "a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim, if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### B.  Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.

*Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

    C.    **The Americans With Disabilities Act**

"The [ADA] prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131–12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182–12189." *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 515 F.3d 356, 361 (4th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)). Relevant to this dispute, under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

7

42 U.S.C. § 12132.

A plaintiff may prove disability discrimination under Title II of the ADA by either pointing to direct evidence of discrimination, or by using the three-prong framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Neal v. E. Carolina Univ.*, 53 F.4th 130, 135 (4th Cir. 2022).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he is a person with a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was denied the benefits, or was otherwise discriminated against, on the basis of his disability.[2]  *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016); *Hall v. Prince George's Cnty.*, No. CIV.A. 8:01-CV-02909, 2003 WL 23350258, at *4 (D. Md. Mar. 4, 2003), *aff'd. sub nom. Hall v. Prince George's Cnty., MD*, 67 F. App'x 819 (4th Cir. 2003) (citations omitted).

With regards to the requirement that a Plaintiff show that he was denied the benefits, or was otherwise discriminated against on the basis of disability, the Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations."  *A Helping Hand*, 515 F.3d at 362; *see also Nat'l Fed'n of the Blind*, 813 F.3d at 503 n.5.  The Fourth Circuit has also held that proving disability discrimination under the ADA requires only that the disability was "a motivating cause" of the alleged discrimination.  *Neal*, 53 F.4th at 135.

Lastly, this Court has held that Title II of the ADA prohibits public entities from implementing certain zoning schemes, or specific zoning actions and burdensome procedural requirements, that treat disabled individuals differently than non-disabled individuals.  *See United States v. City of Baltimore*, 845 F. Supp. 2d 640, 648 (D. Md. 2012) (citations omitted); *see also Start, Inc. v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 569, 575 (D. Md. 2003) ("Numerous precedents establish that the administration of zoning laws is a 'service, program, or activity' within the meaning of the statute.").

---

[2] The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" *White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 542–43 (D. Md. 2020) (quoting 42 U.S.C. § 12102(1)).

### D. The Fair Housing Act

The Fair Housing Act makes it unlawful to "make unavailable or deny, a dwelling to any buyer or renter because of a handicap," or to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a handicap of that person." 42 U.S.C. § 3604(f)(1), (2). Discrimination under the FHA includes the "refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be needed to afford such person equal opportunity to use and enjoy a dwelling[.]" *Id.* at § 3604(f)(3)(B); *see also Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013); *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 603 (4th Cir. 1997).

Similar to the ADA, a plaintiff must furnish either direct evidence of discriminatory intent, which includes "conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested [housing] decision," or proceed under the *McDonnell Douglas* burden-shifting framework, to prove a claim of disability discrimination under Section 3604(f) of the FHA. *Letke v. Wells Fargo Home Mortg., Inc.*, No. RDB-12-3799, 2013 WL 6207836, at *3 (D. Md. Nov. 27, 2013) (citation omitted); *see also Martin v. Brondum*, 535 F. App'x 242, 244 (4th Cir. 2013) (citation omitted). A plaintiff seeking to prove disability discrimination under Section 3604(f) must also show: (1) that he is handicapped and (2) that he was either discriminated against because of his handicap or denied a reasonable accommodation necessary to allow him the same use and enjoyment of his dwelling as other non-handicapped persons. *See Roberson v. Graziano*, No. CIV.WDQ-09- 3038, 2010 WL 2106466, at *2 (D. Md. May 21, 2010), *aff'd*, 411 F. App'x 583 (4th Cir. 2011).

To prevail on a FHA discrimination claim, based upon denial of a reasonable accommodation, a plaintiff must show that "the proposed accommodation is: (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Scoggins*, 718 F.3d at 272 (citation and internal quotation marks omitted); *see also Bryant Woods Inn*, 124 F.3d at 603–04 (citing 42 U.S.C. § 3604(f)(3)). An accommodation is "necessary" under the FHA, if there is a "direct linkage between the proposed accommodation and the equal opportunity to be provided to the handicapped person." *Bryant Woods Inn*, 124 F.3d at 604 (internal quotation marks omitted). Lastly, the Fourth Circuit has recognized that the FHA's requirement that a defendant "afford handicapped persons equal opportunity to use and enjoy

9

housing" does "not require accommodations that increase a benefit to a handicapped person above that provided to a non-handicapped person with respect to matters unrelated to the handicap." *Id.* Notably, here, "[a]nalysis of reasonable accommodation claims are treated the same under the ADA and the FHA." *Oxford House, Inc. v. City of Salisbury, Md.*, No. CV RDB-17-1978, 2018 WL 3127158, at *10 (D. Md. June 26, 2018) (citing *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003) ("the requirements for showing failure to reasonably accommodate are the same under the ADA and the FHA[ ] so we can treat these issues as one")).

### IV.   ANALYSIS

The Defendants have moved to dismiss the complaint, or, in the alternative, for summary judgment on Affinity's discrimination claims, upon the grounds that: (1) Affinity fails to allege plausible ADA and FHA discrimination claims in Counts I, II and III of the complaint, because the complaint lacks sufficient facts to show either that the Zoning Code, or the Defendants' decision not to approve Affinity's petition, were the result of disability discrimination and (2) Affinity fails to state a plausible FHA discrimination claim in Count III of the complaint, because the complaint lacks facts to show that a 16-bed group home facility is necessary to afford disabled persons with an equal opportunity to use and enjoy housing. *See generally*, ECF No. 8-1. And so, the Defendants request that the Court either dismiss Affinity's discrimination claims, or enter summary judgement in their favor on these claims. *See id.*

In the alternative, the Defendants request that the Court abstain from considering this matter, because Affinity is simultaneously pursuing judicial review of the Defendants' decision to deny its petition in state court. *Id.* at 7. And so, the Defendants also request that the Court either dismiss, or stay this case based upon the abstention doctrine. *Id.*

In its response in opposition to the Defendants' dispositive motion, Affinity counters that the Court should not dismiss or stay this matter, because the complaint plausibly alleges that the Defendants engaged in disability discrimination against Affinity and its disabled residents. *See* ECF No. 12-1 at 6-14. Specifically, Affinity argues that it has alleged facts to show disability discrimination in this case, because: (1) the Zoning Code is facially discriminatory and (2) the Defendants previously allowed a 16-bed assisted living facility to operate at the Property. *See id.* In addition, Affinity opposes the Defendants' request that the Court abstain from considering this

dispute pending the resolution of its state court action. *Id.* at 14. And so, Affinity requests that the Court deny the Defendants' motion. *Id.* at 16.

For the reasons that follow, a careful reading of the complaint shows that Affinity has not plausibly alleged ADA and FHA discrimination claims in this action, because the factual allegations in the complaint, taken as true, fail to show that the Defendants discriminated against Affinity and its residents upon the basis of disability. The complaint also makes clear that Affinity fails to plausibly allege a FHA discrimination claim, based upon failure to provide a reasonable accommodation, because the complaint lacks facts to show that the approval of a 16-bed group home facility at the Property is necessary to afford disabled persons with an equal opportunity to use and enjoy housing. And so, the Court: (1) GRANTS the Defendants' dispositive motion and (2) DISMISSES the complaint.

### A. Affinity Fails To Allege Plausible ADA And FHA Discrimination Claims

#### 1. Affinity Fails To Allege Facts To Show Disability Discrimination

As an initial matter, the Defendants argue with persuasion that Affinity fails to allege plausible ADA and FHA disability discrimination claims in this case, because the complaint lacks sufficient facts to show that the Defendants discriminated against it, or its future residents, upon the basis of disability. In the complaint, Affinity asserts claims against the Defendants for: (1) Discriminatory methods of administration, in violation of Title II of the ADA (Count I); (2) Imposition of discriminatory eligibility criteria and requirements, in violation of Title II of the ADA (Count II); and (3) Unlawful discrimination, in violation of the FHA (Count III). *See id.* at ¶¶ 34-60.

To prevail on its ADA discrimination claims in Counts I and II of the complaint, Affinity must show, among other things, that it, or its disabled residents, were denied certain benefits, or otherwise discriminated against upon on the basis of disability. *Nat'l Fed'n of the Blind*, 813 F.3d at 502-03; *Hall*, 2003 WL 23350258, at *4 (citations omitted). To prevail on its FHA discrimination claim in Count III of the complaint, Affinity must similarly show, among other things, that it, or its disabled residents, were either discriminated against because of a handicap, or denied a reasonable accommodation necessary to allow the same use and enjoyment of a dwelling as other non-handicapped persons. *See Roberson*, 2010 WL 2106466, at *2. And so, Affinity cannot prevail on its ADA and FHA discrimination claims in this matter absent a

showing that the Defendants discriminated against it, or its disabled residents, upon the basis of disability.

A careful reading of the complaint shows that Affinity has not alleged sufficient facts to make this showing for two reasons.  First, Affinity has not plausibly alleged ADA and FHA disability discrimination claims based upon the Zoning Code at issue in this case.  Affinity alleges in the complaint that the Zoning Code is discriminatory on its face against individuals seeking substance abuse treatment, because this code only requires that residential drug treatment centers seek a special exception to operate a facility with more than eight beds.  *See* ECF No. 1 at ¶¶ 25, 26, 31; ECF No. 12-1 at 10-12, 16.  But the plain text of Zoning Code makes clear that the 8-bed limitation for multi-resident living facilities applies equally to all types of group homes and home day care facilities.  Notably, Section 5-3 of the Zoning Code provides, in relevant part, that:

> Group home, home day care are permitted in the MU and TR districts and subject to the requirements of that district except as herein provided:
>
> A.  The maximum number of residents of the facility shall be eight (8).
>
> B.  In addition to the residents, there shall be a maximum of three (3) full-time non-resident employees on the premises.
>
> C.  No exterior alterations, additions, or changes to the structure shall be permitted in order to accommodate or facilitate a group home without a Special Exception granted by the Board of Appeals.
>
> D.  Besides the required parking for the dwelling unit, one (1) additional parking space per each nonresident employed on the premises is to be located to the side or rear yard.
>
> E.  No outside storage of equipment shall be permitted.

ECF No. 1 at ¶ 23; *see also* ECF No. 8-4 at 44-45.  The Zoning Code also broadly defines a "group home" as:

> Any residential structure used to provide assisted community living for not more than eight (8) persons with physical, mental, emotional, familial, or social difficulties. This does not include houses organized for this purpose by public or private schools, or churches or other religious or public institutions caring for such persons within the group home building while

>parents or other custodial persons are attending services, activities or meetings.

ECF No. 8-4 at 121. And so, the Court reads the Zoning Code to place the same 8-bed limitation on many different types of group homes and home day care facilities, including any facility that provides assisted community living for persons with "physical, mental, emotional, familial, or social difficulties."

The plain text of the Zoning Code also makes clear that this code does not single out persons seeking substance abuse treatment, or the facilities that provide such services, as Affinity suggests. Notably, the only reference to substance abuse treatment facilities in the Zoning Code is found in Section 4-3(B)(5), which addresses halfway houses and provides, in relevant part that:

>A halfway house is a residence designed to assist persons, especially those leaving institutions, to reenter society and learn to adapt to independent living. Halfway houses aim to assist in community transition, and may provide vocational training, counseling, and other services. Release to a halfway house is used in situations such as the release of mental patients and prisoners. **They are also used for people in addiction recovery as a means to adapt to sober living.** They usually require residents to follow certain rules, such as sign in and sign out procedures and curfews. A halfway house may allow residents to go out to work or study during daytime and return at night. Residency requirements, purposes, and rules vary at each halfway house.

ECF No. 8-4 at 29 (emphasis added); *see also* ECF No. 13 at 3. The Court also observes that this provision in the Zoning Code also applies to facilities serving "mental patients and prisoners," as well as to substance abuse treatment centers. ECF No. 8-4 at 29. Given this, Affinity's argument that the Zoning Code is facially discriminatory against individuals seeking substance abuse treatment is belied by the plain text of the Zoning Code.

Affinity's allegation that the Defendants discriminated against it, and its disabled residents, because Queen Anne's County previously operated a 16-bed assisted living facility at the Property is also insufficient to state a viable disability discrimination under the ADA and FHA. In the complaint, Affinity alleges that the Defendants engaged in intentional discriminatory methods of administration in violation of the ADA, because they previously allowed Safe Haven Manor, a 16-bed assisted living facility, to operate at the Property, but

13

denied Affinity's petition to operate a 16-bed residential substance abuse treatment facility at the same location. ECF No. 1 at ¶¶ 42, 44. There are, however, no factual allegations in the complaint to show that the reason the Defendants denied Affinity's petition to operate a 16-bed substance abuse treatment facility was because of the disability status of its residents.[3]  *See generally*, ECF No. 1.

Affinity's disability discrimination allegations are further undercut by its own acknowledgement in the complaint that the Defendants did, in fact, approve the operation of its group home for up to eight persons seeking residential substance abuse treatment. *Id.* at ¶ 8. Given this, the factual allegations in the complaint, taken as true, simply do not show that the Defendants discriminated against Affinity, and its residents, upon the basis of disability by declining to approve Affinity's petition to operate a 16-bed group home. And so, the Court must dismiss Counts I, II and III of the complaint.[4]

### 2. Affinity Fails To Allege A Plausible FHA Reasonable Accommodations Claim

As a final matter, Affinity also fails to allege a plausible FHA discrimination claim, based upon failure to provide a reasonable accommodation, in Count III of the complaint. The factual allegations in the complaint do not show that a 16-bed facility is necessary to afford Affinity's residents with an equal opportunity to enjoy the Property for several reasons.

---

[3] The Defendants also explain that Section 1-5(B) of the Zoning Code does not apply to property used for public services or government functions, such as the group home operated by Queen Anne's County. *See* ECF No. 8-4 at 2 ("This Zoning Ordinance shall not apply to land, structures and buildings owned by or leased solely to the Federal Government, State of Maryland, Queen Anne's County Commissioners or the Town of Sudlersville, provided that such land, structure or building is used for the sole purpose of providing a public service or carrying out a legitimate government function."). And so, it appears that Safe Haven Manor was able to operate with more residents because the assisted living facility was owned by a local government. ECF No. 1 at ¶¶ 12, 13.

[4] To the extent that Affinity asserts a FHA claim based upon Section 3604(f)(2), this claim must also fail, because the complaint lacks facts to show that the Defendants took any actions related to the sale, or rental of the Property based upon the substance abuse illness of its residents. *See generally*, ECF No. 1. Any disparate treatment or disparate impact claim under the ADA and FHA similarly fails, because, as discussed above, the complaint lacks sufficient allegations to show that the Zoning Code is discriminatory. The complaint also lacks sufficient facts to show that Affinity's disabled residents have been subjected to different treatment than the treatment of other similarly situated persons with disabilities. *See id.*

To state a plausible reasonable accommodation claim, Affinity must allege facts to show that the proposed accommodation is, among other things, necessary to afford disabled persons with an equal opportunity to use and enjoy housing. *Scoggins*, 718 F.3d at 272 (citation and quotation marks omitted); *see also Bryant Woods Inn*, 124 F.3d at 603–04 (citing 42 U.S.C. § 3604(f)(3)). In this regard, the Fourth Circuit has held that an accommodation is "necessary" under the FHA, if there is a "direct linkage between the proposed accommodation and the equal opportunity to be provided to the handicapped person." *Bryant Woods Inn*, 124 F.3d at 604 (internal quotation marks omitted). Given this, the "necessary" element of a reasonable accommodations claim "has attributes of a causation requirement . . . [And so,] if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'" *Id.*; *see also Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105-11 (3d Cir. 2018).

In the complaint, Affinity alleges that the Defendants' decision to allow it to operate an eight-bed group home violates the FHA, because it is not economically viable for Affinity to operate an eight-bed facility. ECF No. 1 at ¶ 19. To support this claim, Affinity alleges that it will lose money by operating an eight-bed facility at the Property, because certain Maryland state licensing requirements require that it retain the same number of staff for an eight-bed group home as for a 16-bed facility. *Id.*

Taken as true, these facts do not show that expanding the number of residents residing at Affinity's group home from eight to 16 is necessary to meet the needs of its disabled residents. *See Bryant Woods Inn*, 124 F.3d at 605 (finding that a request for an accommodation to expand a group home from 8 to 15 residents was not necessary, where, among other things, the "only suggestion in the record from the proposed expansion is that it will financially assist . . . a for profit corporation."). The complaint also lacks facts to show that Affinity's group home could not operate with just eight residents. *Id.*; *see generally*, ECF No. 1.

Because Affinity fails to allege facts to show that increasing the number of residents authorized to reside at its group home is necessary to afford its disabled residents with an equal housing opportunity under the FHA, the Court also GRANTS the Defendants' motion to dismiss

Affinity's FHA discrimination claim based upon a failure to provide a reasonable accommodation.[5]

## V.     CONCLUSION

In sum, a careful reading of the complaint shows that Affinity has not plausibly alleged ADA and FHA discrimination claims in this action.  And so, for the foregoing reasons, the Court:

1. **GRANTS** the Defendants' motion to dismiss, or, in the alternative, for summary judgment; and
2. **DISMISSES** the complaint.

A separate Order shall issue.

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[5] Because the Court has determined that it will dismiss Affinity's claims pursuant to Fed. R. Civ. P. 12(b)(6), it does not reach the issue of abstention.